UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SHAWN P.,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 1:23-cv-00420-AR

OPINION AND ORDER

**ARMISTEAD, Magistrate Judge**

    In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Shawn P. (his last name omitted for privacy) challenges the Administrative Law Judge's evaluation of his subjective symptom testimony by not providing specific, clear and convincing reasons for discounting his testimony, and by not considering new probative

Page 1 – OPINION AND ORDER

evidence submitted to the Appeals Council. Because the court finds the ALJ erred, the Commissioner's decision is reversed and remanded for further proceedings.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on April 3, 2020, alleging disability beginning on March 11, 2016. (Tr. 411.) Plaintiff asserted in his application for disability benefits that his physical and mental health conditions caused him to stop working. Those conditions include degenerative disc disease, lumbar radiculopathy, nerve damage, Raynaud's disease, gastroesophageal reflux disease (GERD), ulcers, and anxiety. (Tr. 431, 437.) His claim was initially denied on August 21, 2020, and again upon reconsideration on May 28, 2021. (Tr. 254-255, 271-272.)

In denying plaintiff's application for DIB, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff meets the insured status requirements through September 30, 2018, and that plaintiff had not engaged in substantial gainful activity from his alleged onset date of March 11, 2016, through his date last insured, September 30, 2018. (Tr. 18.) At step two, the ALJ determined the following severe impairments: lumbar disc degeneration and foraminal stenosis with neurogenic claudication and

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine if a claimant is disabled within the meaning of the Social Security Act, the ALJ must apply a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process ends when the ALJ can determine that the claimant is or is not disabled. The burden of proof is on the claimant at steps one through four, and on the agency at step five. *Ford v. Saul*, 950 F.3d 1141, 1148-49 (9th Cir. 2020); *see also Woods v. Kijakazi*, 32 F.4th 785, 788 n.1 (9th Cir. 2022) (summarizing the steps and noting that "[t]he recent [2017] changes to the Social Security regulations did not affect the familiar 'five-step sequential evaluation process'").

Page 2 – OPINION AND ORDER

cervical stenosis and radiculopathy. (Tr. 18.) At step three, the ALJ determined that plaintiff's impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 20.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that plaintiff has the RFC to perform light work with the following nonexertional limitations: occasional overhead reaching; frequent climbing of ramps and stairs and occasional climbing of ladders and scaffolds; and frequent stooping, kneeling, crouching, and crawling. (Tr. 21.)

At step four, the ALJ determined that plaintiff cannot perform his past relevant work as a truck driver, kitchen manager, cook, sales attendant for building materials, and window assembler. (Tr. 25.) With the RFC in hand, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as bench assembler, hand packager, and office helper. (Tr. 26.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

Page 3 – OPINION AND ORDER

A.     *Plaintiff's Symptom Testimony*

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). At the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

Plaintiff applied for disability benefits, asserting that he has worsening degenerative disc disease, lumbar radiculopathy, nerve damage, Raynaud's disease, gastroesophageal reflux disease, ulcers, heart disease, chronic obstructive pulmonary disease, and anxiety and that those conditions prevent him from working. The ALJ characterized plaintiff's symptom testimony as follows:

> He asserts that he uses a cane and that these conditions make it difficult for him to lift, squat, bend, stand, reach, walk, sit, knee, talk, climb stairs, and use his hands. Additionally, the claimant states these conditions impair his memory, concentration, ability to follow instructions, ability to complete tasks, ability to get along with others, and ability to handle stress and changes in routine. Further, the claimant reports having difficulty attending to his personal needs and grooming, preparing meals, driving, shopping, and managing his own finances.

(Tr. 22.) Although the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," plaintiff's "statements

Page 4 – OPINION AND ORDER

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22.) In particular, the ALJ discounted plaintiff's subjective symptom testimony because he walks and cares for his pets, prepares meals, shops in stores, attends to his personal needs and grooming without assistance, and that he rides the bus. (Tr. 22, citing Tr. 444, 469, 500.) Further, the ALJ found that medication improved plaintiff's low back and leg pain. (Tr. 22.) That is, the ALJ discounted plaintiff's subjective symptom testimony (1) his level of activity was inconsistent with his allegations; and (2) his statements were inconsistent with his medical records.

Plaintiff takes issue with that finding, asserting that, because the ALJ accepted that plaintiff's impairments could reasonably cause some amount of the alleged limitations, the ALJ could only reject plaintiff's symptom testimony by offering specific, clear and convincing reasons for doing so. (Pl.'s Br. at 6, ECF 9 (citing *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2023)).) In plaintiff's view, the ALJ failed to do that when he merely summarized the medical evidence. And plaintiff points out that the Ninth Circuit has explained that a summary of the medical evidence is no substitute for "providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020). What the ALJ's findings lacked, asserts plaintiff, are an explanation of which allegations were undermined or why findings that were often unrelated to plaintiff's impairments or allegations seemingly carried more weight than those that directly related to them." (Pl. Br. at 7.)

The Commissioner responds that the ALJ's explanations were sufficient and that they went beyond what the *Lambert* court described as an insufficient summary of the record. Substantial evidence, the Commissioner argues supports that ALJ's findings. (Def.s Br. at *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (Inconsistency with the

Page 5 – OPINION AND ORDER

medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole reason for doing so.). The court agrees with the Commissioner, in part. Although the ALJ's discussion of the medical evidence is sufficiently specific, clear and convincing, that is not true as to the ALJ's findings about plaintiff's activities of daily living.

      The ALJ discounted plaintiff's testimony because his medical records contradicted his reports, and the ALJ's explanations sufficiently connect plaintiff's reported symptoms with the medical record. That is, as to plaintiff's reports of worsening neck pain and low back pain, the ALJ found that reports from March 2016 show the following: plaintiff was able to toe walk, heel walk, squat without difficulty, and had a normal gait; had a normal straight leg raise test, no pain on extension of his lumbar spine or with anterior flexion, had a negative FABER test, and experienced no pain in his hips and sacroiliac joints; and, as for his upper and lower extremity strength and weakness, testing showed those were all normal. Likewise, the ALJ observed, in June 2016, when plaintiff reported neck and back pain, plaintiff nevertheless had normal range of motion in his neck, no pain with lateral rotation and extension of his cervical spine, a negative Spurlings test, normal gait with the ability to toe walk, heel walk, and squat, full anterior flexion of the lumbar spine without pain, and no loss of sensory or motor strength. As to discomfort with moving his neck, muted reflexes in his upper extremities, and a sense of weakness in his right upper and lower extremities plaintiff reported during a May 2016 orthopedic examination, the ALJ noted that plaintiff "had a normal cervical range of motion, no involuntary and rhythmic muscle contractions, intact sensation, and no focal motor deficits." (Tr. 22.)

      The ALJ explained that similar inconsistencies occurred after 2016. For example, in an April 2017 primary care examination, plaintiff relayed that he had right foot drop and numbness in his legs and hands. Yet, as the ALJ identified, plaintiff had no significant musculoskeletal

abnormalities and had normal sensation, full strength, and intact reflexes. And conservative treatment was continued. The ALJ also observed that, in emergency department examinations in 2017, despite plaintiff saying that he had back pain, did not reveal significant musculoskeletal or neurological abnormalities. The ALJ similarly noted that indications of musculoskeletal or neurological abnormalities did not occur during a primary care examination in January 2018, despite plaintiff complaining of ongoing radiating neck pain and numbness in his right arm. The ALJ identified another inconsistency in an orthopedic surgery examination that same year, where although plaintiff reported persisting symptoms and diminished reflexes in his legs, among other symptoms, he had "a normal gait, intact sensation, no instability, and otherwise full strength and normal reflexes throughout." Physical therapy was prescribed. (Tr. 23.)

  The ALJ's observations about the inconsistencies between plaintiff's reported symptoms and testing and treatment are not, as plaintiff asserts, a summary of the medical evidence. Indeed, the part of the decision that explains the inconsistencies have a pattern that states what plaintiff reported to doctors and then uses words indicating contrast like "however," "while," "although," and "despite" to describe discrepancies. (Tr. 22-24) At bottom, plaintiff asserts he is unable to work because his medical conditions make it "difficult for him to lift, squat, bend, stand, reach, walk, sit, knee, talk, climb stairs, and use his hands," which in turn cause other symptoms like memory impairment or attending to personal needs. It is apparent to the court that the ALJ's focus when discussing the medical evidence is plaintiff's normal gait, full strength, and normal reflexes, which goes to the heart of that symptom testimony. That is more than the "non-specific conclusions" that the Ninth Circuit concluded was objectionable in *Lambert*, 980 F.3d at 1277.

  Nevertheless, inconsistency with the medical evidence cannot serve as the sole basis for discounting plaintiff's testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 494-95 (9th Cir. 2022) ("[A]n

Page 7 – OPINION AND ORDER

ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Plaintiff argues that the ALJ's other reason for discounting plaintiff's subjective symptom testimony—his level of activity was inconsistent with his allegations—was not specific, clear and convincing. That is because, plaintiff contends, the ALJ did no more than make a generic reference to his allegations and that most of the activities described by the ALJ were consistent with his reported symptoms. The Commissioner responds that the ALJ may reasonably discount subjective complaints by relying on plaintiff's ability to carry out certain routine activities. The court agrees with plaintiff.

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

The ALJ's conclusion, however, is unsupported as it ignores much of plaintiff's testimony. Plaintiff stated that walking was difficult, that he could do so for five to 10 minutes before needing to stop and rest, and that his wife helps him take care of his pets. (Tr. 232, 445.) From the same record cited by the ALJ, plaintiff stated that he needs assistance getting into and

Page 8 – OPINION AND ORDER

out of the shower, that he needs help putting on shoes and socks, and that he generally only prepares cereal as a meal. (Tr. 445-46.) Plaintiff also stated that he does not go shopping alone, uses a scooter if available, that he needs help retrieving things from shelves, and that he needs help lifting and carrying items. (Tr. 469.) As for riding the bus, plaintiff testified that he no longer drives and rides the bus because it allows him to change positions between sitting and standing, something he cannot do in a car. (Tr. 226-27.)

Additionally, the ALJ did not find that plaintiff spent a "substantial" portion of his day engaged in household chores or that these activities are transferrable to a work environment. *Ghanim v. Colmin*, 763 F.3d 1154, at 1165; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). Here, the ALJ's findings are not supported by substantial evidence because none of the minimal activities described by plaintiff undermine his testimony. Because the ALJ did not connect plaintiff's activities to any symptom or the degree of any symptom alleged by him, this rationale fails to provide a specific, clear and convincing basis upon which to discount his subjective symptom testimony. *See Lambert*, 980 F.3d at 1277 (holding general high-level reasons did not satisfy specific, clear and convincing standard because ALJ did not identify which testimony was not credible and which evidence contradicted that testimony); *Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

Plaintiff also argues that the ALJ inappropriately discounted his testimony that his back and leg pain improved with some medications. Plaintiff agrees that he reported some improvement with Gabapentin, yet the record does not show significant improvement and effective pain control. (Pl.'s Br. at 11.) In the Commissioner's view, the ALJ appropriately

interpreted the evidence showing medications relieved his pain and that the ALJ reasonably discounted his testimony based on his conservative course of treatment. (Def.'s Br. at 12.) Plaintiff is correct.

In the decision, in the brief paragraph discussing plaintiff's activities, the ALJ states that plaintiff "testified that he rode the bus and that his low back and leg pain improved with medication." (Tr. 22.) To the extent that the ALJ relied on improvement with medication as distinct reason to discount plaintiff's testimony, it fails to provide a clear and convincing basis upon which to discount it. If that was the ALJ's intent, the ALJ failed to explain which evidence of improvement contradicted which portions of plaintiff's testimony. *See Lambert*, 980 F.3d at 1270 (concluding that the ALJ's observation that "medications have been relatively effective in controlling [the claimant's] symptoms" was insufficient reason to discount claimant's testimony).

Additionally, substantial evidence does not support the ALJ's reasoning here. At the hearing, plaintiff testified that "Gabapentin took some of the pressure off of his low back but that was about it." (Tr. 229.) That testimony is entirely consistent with plaintiff's reports to his doctors that gabapentin was helpful, but that it was not effective in relieving his pain. For example, in March 2016, plaintiff reported taking Gabapentin 300mg qhs, and had completed a Medrol does pack, which "helped fairly," and that his usual level of pain was 6/10 to 7/10. (Tr. 585.) Two months later, in May 2016, when plaintiff ran out of Gabapentin, his pain reached a 10/10. (Tr. 583.) In June 2017, plaintiff reported "some" relief with Gabapentin, (Tr. 597), and in January 2018, that Gabapentin gave him a "small amount of relief" (Tr. 593, 857, 908). And later, in May 2019, plaintiff told his doctor that Gabapentin was not helping "as much as he would want." (Tr. 854.) Therefore, because plaintiff consistently reported that Gabapentin

provided only some relief, and the ALJ did not specify which records conflicted with that testimony, this rationale is not a clear and convincing reason to discount plaintiff's testimony. *See Deanna N. v. Comm'r Soc. Sec. Admin.*, 3:22-cv-01618-SB, 2023 WL 8233296, at *5 (D. Or. Nov. 28, 2023) (concluding ALJ erred in relying on improvement and conservative treatment to discount claimant's symptoms where ALJ failed to identify specific instances of improvement).

B.    *Consideration of New Evidence*

Plaintiff argues that the ALJ erred by failing to consider late-submitted evidence, including MRIs from 2016, evidence of branch block injections, caudal steroid injections, and medical opinions from plaintiff's treating physician. (Pl.'s Br. 11-12, ECF 9.)

The Appeals Council will review an ALJ's decision at a party's request where it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R § 404.970(a)(5). The Appeals Council "only consider[s] additional evidence . . . if [the claimant] show[s] good cause" for not having timely submitted the evidence to the ALJ. 20 C.F.R § 404.970(a)(5); *see also* 20 C.F.R. § 404.935 (parties must make every effort to ensure that the [ALJ] receives all of the evidence and must inform us about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing). Accordingly, when the Appeals Council "considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

Page 11 – OPINION AND ORDER

Before his hearing, plaintiff informed the ALJ that he had requested evidence but had not yet received it. (Tr. 560.) At the hearing, plaintiff informed the ALJ that he was still waiting on requested evidence and was granted ten days to submit it. (Tr. 563.) After the hearing, on May 4, 2022, the Appeals Council granted plaintiff another extension to submit the new evidence. (Tr. 8.) Plaintiff submitted the new evidence on May 30, 2022, which consisted of MRIs from 2016, evidence of steroid and branch block injections, and two function reports from plaintiff's treating physician. (Tr. 43-44, 50-52, 65, 75, 184, 191, 562-63.) The Appeals Council considered the new evidence and determined it did not "show a reasonable probably that it would change the outcome of the [ALJ's] decision" and denied plaintiff's request for review. (Tr. 2-3.)

Plaintiff argues that the two functional assessments by his treating physician are the "most relevant" of the additional evidence and warrants a remand because they are the only medical opinions that exist in the record. (Pl.'s Br. at 12, ECF 9.)

Dr. Jamie Palmer's first medical opinion, completed on June 3, 2019, six months after plaintiff's date list insured, stated that plaintiff could occasionally sit, stand, walk, balance, bend, walk on uneven surfaces, kneel, crawl, climb ladders and stairs, and drive. (Tr. 51.) Dr. Palmer also found that plaintiff could frequently reach at, and above, shoulder level. (Tr. 51.) Dr. Palmer opined that plaintiff could frequently lift, carry, and push/pull up to 10 pounds, frequently push/pull over 20 pounds, occasionally lift and carry over 20 pounds, and never lift more than 21 pounds, never carry more than 51 pounds, and never push/pull more than 21 pounds. (Tr. 51.) Dr. Palmer further opined that plaintiff was limited to sometimes using his right hand for simple grasping and pushing/pulling but could not use his right hand for fine manipulation or finger dexterity; he made no determination regarding plaintiff's left hand. (Tr. 51.) Dr. Palmer also noted that his determination of plaintiff's functional limitation was primarily based on plaintiff's

Page 12 – OPINION AND ORDER

self-reports, and that, although plaintiff had consistently reported pain, those reports were subjective. (Tr. 51-52.)

Dr. Palmer's second medical opinion was completed on August 1, 2019, eight months after plaintiff's date last insured. (Tr. 43-44.) Dr. Palmer stated that plaintiff could sit, stand, and walk for a total of two hours in an eight-hour workday, that he could sit for 10 minutes before needing to change position, that he could stand for five to 20 minutes, and that he could walk for 10 minutes. Those limitations included that they were "for now." Dr. Palmer then stated that plaintiff could frequently lift and carry up to 10 pounds, could frequently push/pull up to 20 pounds, could occasionally lift and carry up to 20 pounds, but could never lift, carry, or push/pull more than 21 pounds. (Tr. 43.) On the Karnofsky Performance Status Scale, Dr. Palmer noted he was at 60 percent, meaning he is unable to work but able to live at home, care for most personal needs, and has a varying degree of assistance needed. A more specific explanation in the box checked states that plaintiff requires occasional assistance but is able to care for most personal needs. Dr. Palmer also notes that he expects plaintiff's condition to regress and there is no anticipated return to work date "unless surgery is quite effective." At the time of his opinion, Dr. Palmer noted there was no anticipated date for surgery. (Tr. 44.)

Plaintiff argues that because Dr. Palmer's opinions included greater functional limitations than those accounted for within the RFC, there was a reasonable probability this the new evidence would have changed the outcome of the ALJ's disability determination. (Pl.'s Br. at 13-14, ECF 9.)

The Commissioner responds that the new evidence would not lead to a different conclusion, noting that plaintiff's branch block spinal injection provided more than 80 percent pain relief, and that summaries of the 2016 MRIs were already present in the record considered

Page 13 – OPINION AND ORDER

by the ALJ. (Def.'s Br. at 14-15, ECF 13.) The Commissioner also argues that Dr. Palmer's medical opinions are irrelevant because they do not "relate[] to the period on or before the date of the hearing decision," and that Dr. Palmer makes no indication that his assessments date back to plaintiff's date last insured. (Def.'s Br. at 15-16, ECF 13.); *see* 20 C.F.R. § 404.970(a)(5). The Commissioner further argues that even if Dr. Palmer had prepared his opinions during the relevant period, it would not support remand because his opinion was based on plaintiff's self-reports. (Def.'s Br. at 16, ECF 13.); *see also Ghanim*, 763 F.3d at 1162 ("If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.") Lastly, the Commissioner argues that Dr. Palmer's second medical opinion does not relate back to plaintiff's date last insured and is an opinion formed on a recent impression, noting that Dr. Palmer's opinion includes that plaintiff's condition had "progressed further during last 2 months as well." (Def.'s Br. at 17, ECF 13.); (Tr. 43.)

In this case, the medical opinions provided by Dr. Palmer raise conflicts between the ALJ's assessment of plaintiff's limitations and those presented by Dr. Palmer. For example, the ALJ's RFC contains no limitations to standing, walking, sitting, or needing to change position. (Tr. 21.) Therefore, plaintiff's RFC was formulated without the benefit of Dr. Palmer's assessments. Conflicts between the limitations expressed in Dr. Palmer's opinion and the limitations contemplated in the ALJ's RFC determination must be resolved by the ALJ. *See Lucas W. v. Comm'r, Soc. Sec. Admin.*, 2024 WL 35455, at 5* (D. Or. Jan. 3, 2024) (noting that when new medical evidence contradicts the ALJ's RFC formulation, the ALJ must "consider" and "harmonize" the evidence with the remainder of the opinion). The ALJ did not have an opportunity to analyze the information provided in the medical opinions completed by Dr.

Palmer. The ALJ should have the opportunity to review the submitted medical opinions because it is possible that the ALJ's analysis could result in a different RFC.

**C.     *Remedy***

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). In this case, plaintiff asks the court to remand this case for further proceedings because the ALJ failed to provide specific, clear, and convincing reasons to reject plaintiff's subjective symptom testimony, and because the ALJ did not have a chance to evaluate the newly submitted medical opinions of Dr. Palmer. Remand for further proceedings is the appropriate remedy here.

As discussed above, the ALJ erred because symptoms inconsistent with the medical evidence alone was not a sufficient reason to reject plaintiff's symptom testimony. Additionally, the ALJ did not have the opportunity to consider Dr. Palmer's medical opinions that were submitted to the Appeals Council. As such, there are conflicts in the record about plaintiff's RFC that remain unresolved. *Taylor v. Berryhill*, 729 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made.) Because those errors are "not inconsequential to the ultimate nondisability determination," remand is appropriate. *See Treichler v. Comm'n Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

On remand, the ALJ must reassess plaintiff's subjective symptom testimony and either accept the described limitations or provide specific, clear and convincing reasons as to why it should be rejected. The ALJ also must review the evidence submitted to the Appeals Council, evaluate Dr. Palmer's medical opinions, and either incorporate those limitations into the

Page 15 – OPINION AND ORDER

plaintiff's RFC or provide reasoning with substantial evidence as to why Dr. Palmer's medical opinions are rejected. As warranted, the ALJ will reevaluate plaintiff's RFC, offer plaintiff a new hearing, and obtain supplementary VE evidence if necessary. *Garrison*, 759 F.3d at 1019 (stating remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS for further proceedings.

ORDERED on May 31, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge